**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

———————————————————

KATHY L. ROBERTS,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

1:15-cv-06837-NLH

**OPINION**

———————————————————

**APPEARANCES:**

SAMUEL FISHMAN
11450 BUSTLETON AVENUE
PHILADELPHIA, PA 19116

PAUL T. MCCHESNEY (*pro hac vice*)
188 ALABAMA STREET
SPARTANBURG, SC 29302

      On behalf of Plaintiff

QUINN E.N. DOGGETT
RACHEL E. LICAUSI
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET
PHILADELPHIA, PA 19123

      On behalf of Defendant

**HILLMAN**, District Judge

      This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), regarding Plaintiff's application for Disability

Insurance Benefits ("DIB") and Supplemental Security Income

("Social Security benefits") under Title II and Title XVI of the Social Security Act.[1]  42 U.S.C. § 401, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since her alleged onset date of disability, January 20, 2006.  For the reasons stated below, this Court will affirm that decision.

I.    BACKGROUND AND PROCEDURAL HISTORY

       This Social Security appeal presents a more complex procedural history than most.  On June 26, 2006, Plaintiff, Kathy L. Roberts, protectively filed for Period of Disability and Disability Insurance Benefits, based on Title II of the Social Security Act, alleging an onset date of January 20, 2006. Plaintiff claimed several impairments, including lumbar spine degenerative disc disease, hypertension, episodic sciatica, recurrent episodes of sinusitis, venous insufficiency, trench foot, fibromyalgia, depressive disorder with anxiety features, somatoform disorder, bilateral L5 radiculopathy, and adjustment disorder with depression and anxiety.  Plaintiff had previously

---

[1] As explained below, the Appeals Council consolidated Plaintiff's applications for Social Security benefits and DIB, and the ALJ issued a ruling on both applications in a single decision.  (R. at 621.)

worked as a receiving checker, an administrative clerk, a general clerk, an accounting clerk, and a service establishment attendant.  The claims were denied on August 29, 2006 and again on November 28, 2006, and Plaintiff filed a request for hearing on December 7, 2006.

Plaintiff protectively filed an SSI application on August 17, 2007.  This application was escalated to the hearing level.  A hearing was held, and on June 26, 2008 an unfavorable decision was issued by an ALJ, denying the claim.  Plaintiff filed a Request for Review of Hearing Decision/Order on August 22, 2008.  While awaiting Appeals Council review, Plaintiff protectively filed another claim for Period of Disability and Disability Insurance Benefits on April 27, 2009, with an alleged onset date of February 1, 2009.  It was denied at the initial level on January 14, 2010.

On March 18, 2010, the Appeals Council denied Plaintiff's August 22, 2008 Request for Review of the denial of Plaintiff's August 17, 2007 claim.  Plaintiff thereafter brought a civil action in the United States District Court for the District of South Carolina, where Plaintiff previously resided, and on April 11, 2011, that court remanded the action to the Social Security Administration.  On November 14, 2011, the Appeals Council

3

vacated its March 18, 2010 Order and remanded the case for further administrative proceedings.[2]

In its November 14, 2011 order remanding Plaintiff's August 17, 2007 claim, the Appeals Council also rendered the April 27, 2009 claim as duplicative of Plaintiff's August 17, 2007 claim. The Appeals Council instructed the Office of Disability Adjudication and Review ("ODAR") to associate the two claims – one for DIB and one for Social Security benefits – and issue a new decision on the associated claims.  The ALJ held another hearing and issued another unfavorable decision on December 6, 2012.  Plaintiff filed a Request for Review of Hearing Decision/Order on January 2, 2013.

In an order dated April 9, 2013, the Appeals Council remanded the case to a different ALJ.  Plaintiff appeared and testified at a hearing held on January 14, 2014, in Greenville, South Carolina.  An impartial vocational expert also appeared at the hearing.

On March 6, 2015, the ALJ issued her decision denying Plaintiff's application, finding that even though Plaintiff

---

[2] The ALJ's recitation of the procedural history stated that the Appeals Council vacated its previous Order on November 24, 2011. This is a typographical error.  The correct date of the Appeal Council's Order is November 14, 2011.  (R. at 712.)

4

suffered from a severe impairment – lumbar spine degenerative disc disease with herniated nucleus pulposus (HNP) at L4-5 and radiculopathy – the claimant was not disabled from her alleged onset of disability, January 20, 2006, through February 17, 2010, the end of the requested closed period, because she retained the residual functional capacity to perform her past work as an accounting clerk.

Plaintiff appealed that decision to the Appeals Council, which denied Plaintiff's request for review on July 15, 2015. Having exhausted all of her administrative remedies, Plaintiff has filed the instant action seeking this Court's review of the ALJ's March 6, 2015 decision.

## II. DISCUSSION

### A.   Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000);

Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).

Substantial evidence means more than "a mere scintilla."

Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting

Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It

means "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion."  Id.  The inquiry is not

whether the reviewing court would have made the same

determination, but whether the Commissioner's conclusion was

reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir.

1988).

A reviewing court has a duty to review the evidence in its

totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.

1984).  "[A] court must 'take into account whatever in the

record fairly detracts from its weight.'" Schonewolf v.

Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks

v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th

Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S.

474, 488 (1951)).

The Commissioner "must adequately explain in the record his

reasons for rejecting or discrediting competent evidence."

Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing

Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third

Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or

7

substitute its conclusions for those of the fact-finder."
Williams, 970 F.2d at 1182.  However, apart from the substantial
evidence inquiry, a reviewing court is entitled to satisfy
itself that the Commissioner arrived at his decision by
application of the proper legal standards.  Sykes, 228 F.3d at
262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983);
Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

   **B.   Standard for Disability Insurance Benefits**

   The Social Security Act defines "disability" for purposes
of an entitlement to a period of disability and disability
insurance benefits as the inability to engage in any substantial
gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to result in
death, or which has lasted or can be expected to last for a
continuous period of not less than 12 months.  See 42 U.S.C. §
1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as
disabled only if his physical or mental impairments are of such
severity that he is not only unable to perform his past relevant
work, but cannot, given his age, education, and work experience,
engage in any other type of substantial gainful work which
exists in the national economy, regardless of whether such work
exists in the immediate area in which he lives, or whether a

specific job vacancy exists for him, or whether he would be hired if he applied for work.   42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.   See 20 C.F.R. § 404.1520.   This five-step process is summarized as follows:

1.   If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2.   If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3.   If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.   If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5.   Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy.   If he is incapable, he will be found "disabled."   If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).   Entitlement to benefits is therefore dependent upon a finding that the claimant is

incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  See id.  In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C.  Analysis**

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability.  At step two, the ALJ found that Plaintiff's impairment of lumbar spine degenerative disc disease with herniated nucleus pulposus (HNP) at L4-5 and radiculopathy was severe.  At step three the ALJ determined that Plaintiff's severe impairment or her severe impairment in combination with her other impairments did not equal the severity of one of the

listed impairments.  For step four, the ALJ determined that Plaintiff could perform her past work as an accounting clerk, which job is of a sedentary level and exists in sufficient numbers in the national economy.

Plaintiff has raised two issues on appeal.  Plaintiff contends that the ALJ erred in failing to properly evaluate her capability of performing her past work.  Plaintiff also argues that the ALJ did not properly consider the opinion of one of her treating physicians, Dr. Deehan.  The Court will address these arguments in turn.

As a primary matter, however, the Court notes that the ALJ issued a detailed and comprehensive 32-page decision, which was the capstone of a nine year process in the SSA that began in June 2006 and entailed many twists and turns.  The ALJ who issued the SSA's final decision in March 2015 noted that she was required by the Appeals Council to do the following:

Upon remand, the Administrative Law Judge will:

Further evaluate the claimant's mental impairments in accordance with the special technique described in 20 CFR 404.l520a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c).

Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to

11

evidence of record in support of assessed limitations
(Social Security Ruling 96- 8p). In so doing, evaluate the
treating and nontreating source opinions pursuant to the
provisions of 20 CFR 404.1527 and Social Security Rulings
96-2p and 96-5p and nonexamining source opinions in
accordance with the provisions of 20 CFR 404.1527 and
Social Security Ruling 96-6p, and explain the weight given
to such opinion evidence. As appropriate, the
Administrative Law Judge may request the treating and
nontreating sources to provide additional evidence and/or
further clarification of the opinions and medical source
statements about what the claimant can still do despite the
impairments (20 CFR 404.1512). The Administrative Law
Judge may enlist the aid and cooperation of the claimant's
representative in developing evidence from the claimant's
treating sources.

Further consider whether the claimant can perform her
past relevant work as a clerical worker as the claimant
actually performed the work and as the job is generally
performed in the national economy in accordance with 20 CFR
404.1565. If warranted, obtain vocational expert testimony.

(R. at 591.)

The ALJ stated, "I believe that I have fully complied with

this order." (Id.) The Court agrees with the ALJ, despite

Plaintiff's objections to the contrary.

With regard to the finding that Plaintiff was capable of

performing her past work as an accounting clerk, Plaintiff

argues that the ALJ erred when she (1) did not set forth the

physical and mental demands of Plaintiff's former job, (2) did

not consider her mental impairments in combination with her

physical limitations, and (3) did not find her disabled based on

the "Grids." None of these arguments is availing.

12

Plaintiff argues that her testimony regarding her duties in her prior clerical positions fell into the light exertional work category, and thus the finding that Plaintiff was capable of performing her past work does not match the ALJ's conclusion that she was capable of her past work at the sedentary level.[3] Even though Plaintiff's past work included positions at the light and medium exertional level (R. at 620), the vocational expert testified that Plaintiff's work as an accounting clerk,

---

[3] See 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy. These terms have the same meaning as they have in the Dictionary of Occupational Titles, published by the Department of Labor. In making disability determinations under this subpart, we use the following definitions:

(a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. . . .").

as defined by the Dictionary of Occupational Titles ("DOT"),
classified as a sedentary level position.  The ALJ explained her
decision as to why Plaintiff remained capable of performing that
type of job between January 2006 and February 2010:

> In comparing the claimant's residual functional capacity
> with the physical and mental demands of this work, I find
> that the claimant was able to perform this job as actually
> and generally performed.  With the above sedentary RFC
> (with only minor non-exertional limitations), the VE
> testified that the claimant was able to perform her past
> work as an accounting clerk, DOT # 216.482-010, which is
> sedentary with a [specific vocational preparation ("SVP")]
> of 5.[4] The VE testified that there are 2,251 accounting
> clerk jobs in the region and 147,188 accounting clerk jobs
> nationally. The VE stated that this is a stable occupation;
> therefore, these job numbers would not be vastly different
> for the period in question.  Because the VE testimony is
> relied upon, the testimony is accepted in accordance with
> SSR 00-4p.

(R. at 620.)

The ALJ concluded that Plaintiff retained the RFC to
perform sedentary work with certain limitations.  (R. at 602.)
The VE confirmed that Plaintiff's RFC matched the demands of the
accounting clerk position.  (R. at 620.)  How Plaintiff may
have performed the specific accounting clerk position in the

---

[4] The DOT lists a specific vocational preparation (SVP) time for
each described occupation. Using the skill level definitions in
20 CFR 404.1568 and 416.968, unskilled work corresponds to an
SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and
skilled work corresponds to an SVP of 5-9 in the DOT.

past does not preclude a finding that she was capable of performing the same type of job in the future with certain modifications.  See 20 C.F.R. § 404.1560(b)(2).[5]  The ALJ did not err when she relied upon the VE's testimony that Plaintiff was capable of performing her past work as an accounting clerk based on Plaintiff's current RFC.  See Vega v. Commissioner of Social Sec., 358 F. Appx 372, 376 (3d Cir. 2009) (finding the ALJ's determination that the claimant was capable of performing her past work supported by substantial evidence where the ALJ cited a vocational expert's testimony as to the physical and mental demands of the claimant's past work while also considering the claimant's testimony as to the demands of her past work).

---

[5] 20 C.F.R. § 404.1560(b)(2) ("Determining whether you can do your past relevant work. We will ask you for information about work you have done in the past. We may also ask other people who know about your work. (See § 404.1565(b).) We may use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. . . . ").

Plaintiff next argues that the job of accounting clerk is mentally demanding, and the ALJ failed to consider this aspect of the job in her determination that Plaintiff retained the capacity to perform her past work.  It is unclear how Plaintiff feels that she could not meet the "mentally demanding" aspects of an accounting clerk job, but if she is concerned about her mental health impairments' effect on her abilities, the ALJ had previously determined that Plaintiff's purported mental impairments were not really impairments at all, since Plaintiff's mental exams were all "grossly normal," and she had never sought mental health treatment.  (R. at 619.)  If Plaintiff is concerned about the intelligence or educational requirements of an accounting clerk position, the ALJ noted that Plaintiff only required minimal non-exertional limitations to her RFC, and with those restrictions, Plaintiff still retained the capacity to perform the mental demands of a job she performed previously.  Thus, the ALJ did not err in this regard as Plaintiff contends.

Plaintiff's final argument on the ALJ's finding that Plaintiff was capable of performing her past work as an accounting clerk is that a determination that a claimant is only capable of sedentary work who is approaching advanced age (age

16

50-54) with a limited education and non-transferability of skills should be deemed disabled under the Medical-Vocational Guidelines, or "Grids."  This premise may be true in certain circumstances, but it is not mechanically applied, and it is only where an ALJ has determined that the claimant is not capable of performing past relevant work.  See 20 C.F.R. Pt. 404, Subpt. P. App. 2, 201.00(g) ("Individuals approaching advanced age (age 50-54) may be significantly limited in vocational adaptability if they are restricted to sedentary work.  When such individuals have no past work experience or can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains. . . .").  The ALJ therefore did not commit error when she did not deem Plaintiff to be disabled under the Grids.

The next basis for Plaintiff's appeal is her contention that the ALJ did not properly consider the opinions of Plaintiff's treating physician, Dr. Deehan, particularly his findings regarding Plaintiff's work-preclusive limitations. This argument is also unpersuasive.

The ALJ painstakingly discussed almost "every tidbit" of medical evidence regarding Plaintiff's condition during the relevant time period, even though an ALJ is not required to.

17

<u>Fargnoli v. Massanari</u>, 247 F.3d 34, 42 (3d Cir. 2001) ("[W]e do
not expect the ALJ to make reference to every relevant treatment
note in a case where the claimant . . . has voluminous medical
records."); <u>Hur v. Barnhart</u>, 94 F. App'x 130, 133 (3d Cir. 2004)
("There is no requirement that the ALJ discuss in its opinion
every tidbit of evidence included in the record."). Plaintiff's
treating physician, Dr. Deehan, was just one provider whose
medical records the ALJ considered. Even though a treating
physician's opinions are entitled to "great weight," an ALJ may
reduce her reliance upon a treating physician's opinions if it
is inconsistent with other medical evidence, and if she explains
her reasoning. <u>Plummer v. Apfel</u>, 186 F.3d 422, 439 (3d Cir.
1999) ("[A]n ALJ is permitted to accept or reject all or part of
any medical source's opinion, as long as the ALJ supports his
assessment with substantial evidence."); <u>Cotter v. Harris</u>, 642
F.2d 700, 705 (3d Cir. 1981) ("We are also cognizant that when
the medical testimony or conclusions are conflicting, the ALJ is
not only entitled but required to choose between them. . . .
[W]e need from the ALJ not only an expression of the evidence
s/he considered which supports the result, but also some
indication of the evidence which was rejected."); <u>Adorno v.
Shalala</u>, 40 F.3d 43, 48 (3d Cir. 1994) (holding that an ALJ "may

properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects"). This is exactly what the ALJ did here over the span of many pages in her decision. (R. at 613-619.)

The ALJ gave Dr. Deehan's opinions controlling weight for a certain period of treatment in November 2005 through January 2006 (R. at 614), but then did not afford his opinions the same weight in March 2010, which was the first time Plaintiff had seen Dr. Deehan since January 2006 (R. at 619). The ALJ explained why she afforded controlling weight to Dr. Deehan's earlier opinions and little weight to Dr. Deehan's March 2010 opinion. In between the discussion of Dr. Deehan's treatment notes, the ALJ reviewed numerous other medical records from treating and consultative providers, and explained why she did or did not credit those opinions. (R. at 614-19.)

Plaintiff argues that the ALJ discounted one of Dr. Deehan's treatment notes in February 2006 because she could not decipher the signature, and that particular treatment note stated that Plaintiff could not stoop, which would support a finding that Plaintiff could not perform her past relevant work. However, the ALJ found that all of Dr. Deehan's opinions were

19

"not consistent with [SSR regulations] in that they are based on underlying assumptions or definitions that are inconsistent with regulatory policies and definitions. . . . In short, Dr. Deehan's opinions do not use functional terms and therefore are not an adequate evaluation of the claimant's RFC pursuant to [SSR regulations]." (R. at 614.) Thus, even if the ALJ attributed the undecipherable treatment note to Dr. Deehan, it would have been discounted as to Plaintiff's residual functional capacity for the same reasons as his other treatment notes.

Finally, Plaintiff's argument that Dr. Deehan's opinions compelled the finding of disability ignores the ALJ's assessment of all the other medical evidence, which supported the contrary conclusion. See 20 C.F.R. § 404.1527(e) (explaining that the issue of whether a claimant is "disabled" is reserved for the Commissioner, and a physician's opinion thereon is not entitled to any special significance). At the conclusion of providing a detailed analysis of Plaintiff's treatment records, the ALJ observed: "Overall, the record reveals infrequent visits to the doctor and only conservative treatment for allegedly disabling symptoms. . . . The record reflects significant gaps in the claimant's treatment history. Finally, the claimant was not referred for surgery, and the notes suggest that the claimant

did not want to pursue surgery.  From January 20, 2006 to February 17, 2010, this evidence was inconsistent with disabling symptoms including chronic pain." (R. at 613.)

This summary of the ALJ's meticulous assessment of all of the medical evidence, which included Dr. Deehan's treatment notes, demonstrates that the ALJ's ultimate determination that Plaintiff was not disabled from January 20, 2006 through February 17, 2010 is supported by substantial evidence.

## III. Conclusion

For the reasons expressed above, the ALJ's determination that Plaintiff was not totally disabled as of January 20, 2006 through February 17, 2010 because Plaintiff retained the ability to perform past relevant work is supported by substantial evidence.  The decision of the ALJ is affirmed.

An accompanying Order will be issued.


Date: __January 3, 2017__            __s/ Noel L. Hillman__
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.